FILED
2011 Mar-07 PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

FILED
2011 MAR -7 P 3: 31

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **ADRIAN THORNTON,** | ) | |
| **an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:** CV-11-HS-0898-M |
| | ) | |
| **LIONHEART FUNDING, LLC,** | ) | |
| **a Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, in the above styled cause, and for Plaintiff's Complaint against the Defendant states as follows:

## JURISDICTION & VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), out of state law violations and out of the invasions of Plaintiff's personal and financial privacy by the Defendant and its agents in their illegal efforts to collect a consumer debt from Plaintiff.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

## BACKGROUND OF FDCPA

4. Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a) There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## PARTIES

5. Plaintiff Adrian Thornton (hereinafter "Plaintiff" or "Thornton") is a natural person who is a resident and citizen of this District (Rainbow City).

6. Defendant Lionheart Funding, LLC, ("Lionheart" or "Debt Buyer") is a domestic debt collection firm that engages in the business of debt collection. It conducts business in Alabama. Its principal place of business is the State of Alabama and it is incorporated in Alabama. (Any reference to "Debt Buyer" or "Defendant" or "Lionheart" refers to Defendant, Lionheart Funding, LLC and its agents, employees, and representatives.)

## FACTUAL ALLEGATIONS

7. Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

8. Debt Buyer claims it bought the consumer debt of Thornton.

9. Debt Buyer did not contact Thornton at any time before suing Thornton.

10. On or about May 15, 2009, Debt Buyer sued Thornton in the Jefferson County District Court of Alabama, case number DV-2009-1877.

11. The amount claimed in the suit was $5,241.67.

12. Thornton did not know about the suit or Debt Buyer's alleged ownership of the debt until Thornton was served by Debt Buyer on March 7, 2010, a Sunday.

13. The next day, March 8, 2010, Thornton contacted Debt Buyer about settling the matter to avoid going to court.

14. Thornton was told he had two options to avoid going to court and to settle the case.

15. First, Thornton was told he could pay $2000 at once as payment in full.

16. Or, secondly, Thornton could pay $200 per month until he had paid $4800.

17. Thornton informed Debt Buyer he could not pay $2000, but he could make monthly payments.

18. Thornton, however, told Debt Buyer he could not always make $200 a month payments, but would pay something every month until the $4800 was paid off.

19. (Debt Buyer never told Thornton that the amount of the money he was sending was insufficient or a problem until after the garnishment described below.)

20. Debt Buyer agreed to this monthly payment approach.

21. Thornton requested the information on who and where to send the money to and what to put on the payments.

22. Debt Buyer told Thornton where to send the payments to and what to write on the money orders and who to make the money orders out to.

23. Debt Buyer requested Thornton's current address (Rainbow City) and place of employment (Alabama Power).

24. Thornton provided all information requested by Debt Buyer.

25. Debt Buyer never mentioned to Thornton about garnishment.

26. Debt Buyer never mentioned to Thornton about default judgment.

27. Debt Buyer suppressed from Thornton that it intended to seek a default judgment even in the month of March 2010.

28. Debt Buyer did not tell Thornton it wanted the employment information for garnishment purposes.

29. Thornton believed Debt Buyer in all its representations and suppressions of material fact.

30. Thornton's reliance upon Debt Buyer's representations was reasonable and justified and entirely appropriate.

31. Thornton made the first $200 payment[1] on March 12, 2010 as agreed.

32. Debt Buyer received this money.

33. In a stunning move, Debt Buyer failed to keep its promise to Thornton.

---

[1] All payments were made by MoneyGram and were mailed to Debt Buyer, postage prepaid, and none were returned by Debt Buyer or the Post Office until the November 2010 MoneyGram described below.

34. On March 25, 2010, just seventeen days after settling the case and less than two weeks after receiving the agreed upon first payment, Debt Buyer filed an "Application, Affidavit and Entry of Default and Default Judgment" against Thornton.

35. In this document, Debt Buyer stated on multiple occasions that Thornton "fail[ed] to plead, answer, or otherwise defend."

36. Debt Buyer failed to inform the Court that the case had been settled.

37. Debt Buyer failed to inform the Court that Thornton contacted Debt Buyer the day after Thornton was served.

38. Debt Buyer intentionally withheld from Thornton that it was going to file for a default judgment.

39. Debt Buyer failed to inform the Court that it had promised Thornton that he did not need to take any action since the case had been settled.

40. Debt Buyer acted in full accordance and consistently with its plan which was to move for a default judgment despite the settlement.

41. Based upon information and belief, Debt Buyer has engaged in this course of conduct on other occasions where it settles a case but yet still seeks and obtains a default judgment against the consumer with whom it has settled the case.

42. Debt Buyer did admit that it received the $200 that Thornton sent Debt Buyer on or about March 12, 2010, as the amount claimed for the default judgment was $5041.67 which is $200 less than the amount in the lawsuit.

43. This admission is reflected in the statement "THIS JUDGMENT REFLECTS CREDITS OF $200.00 SINCE SUIT WAS FILED."

44. Debt Buyer, however, did not inform the Court that the $200 "since suit was filed" meant the money was received less than two weeks before the default judgment motion was filed.

45. Even though Debt Buyer had the address of Thornton, it did not serve a copy of the request for default judgment to Thornton.

46. No communication of any type was ever received by Thornton from Debt Buyer after the settlement discussion and agreement which occurred on March 8, 2010.

47. Thornton had no knowledge that Debt Buyer, which had settled with him on March 8, and had received his $200 shortly after March 12, had requested a default judgment on March 25, 2010.

48. Since Thornton had no knowledge of what Debt Buyer had done, Thornton did not know to inform the Court of the true events that had occurred.

49. Debt Buyer through its actions and omissions prevented Thornton from being able to defend himself in Court against this default judgment.

50. As a result, the Court entered default judgment against Thornton for $5,041.67 plus costs of $286.

51. Thornton did not receive a copy of the judgment[2].

52. Debt Buyer did not send Thornton a copy of the judgment.

53. Even after this, Thornton continued to send money every month to Debt Buyer.

54. Debt Buyer continued to accept the money.

55. Thornton followed through on his part of the settlement agreement.

56. Debt Buyer, however, refused to honor its representations and its promise to Thornton.

57. In late October, 2010, Debt Buyer caused a garnishment to be issued against Thornton's employer, Alabama Power Company.

58. In late October or early November, Thornton was shocked to discover that a judgment had been entered against him in March 2010, the same month he settled the case.

59. Thornton was shocked, humiliated and embarrassed to have his private affairs brought to the attention of his employer and co-workers through a garnishment.

[2] It appears the Court did not update Thornton's address until October 29, 2010. It is unclear whether or not Debt Buyer informed the Court of Thornton's address in Rainbow City.

60. Thornton contacted Debt Buyer as he was shocked to learn of the garnishment from his employer.

61. Debt Buyer told Thornton he did not honor the agreement and then told Thornton he should have requested Debt Buyer send the agreement in writing.

62. Debt Buyer told Thornton it was his fault for not insisting that the agreement be in writing.

63. On or about November 13, 2010, when Thornton (through counsel) sought to find out what had happened, Debt Buyer's response was filled with hostility, insults and vulgarities.

64. Debt Buyer refused again to honor the agreement it had entered with Thornton when asked to do so.

65. Debt Buyer refused to vacate the judgment.

66. Debt Buyer refused to release the garnishment.

67. Debt Buyer refused to apologize for its conduct towards Thornton.

68. Debt Buyer admits that its actions were not by accident, error, or mistake.

69. Debt Buyer intentionally refused to honor the agreement.

70. Debt Buyer intentionally refused to honor the agreement when it filed the application for default.

71. Debt Buyer intentionally refused to honor the agreement when it failed to inform the Court of the settlement.

72. Debt Buyer intentionally refused to honor the agreement when it failed to inform the Court of Thornton's intent to prevent a judgment.

73. Debt Buyer intentionally refused to honor the agreement when it failed to tell the Court Thornton had in fact responded to the Complaint when he contacted Debt Buyer.

74. Debt Buyer intentionally took the full garnishment amount from Thornton's paychecks.

75. Debt Buyer refused to accept Thornton's monthly money orders starting in November 2010.

76. Since Debt Buyer refused to accept further money orders, and since Debt Buyer was obtaining a garnishment in the maximum amount allowable by law, Thornton did not send any additional money orders to Debt Buyer.

77. To have sent further money orders, in keeping with the settlement agreement, would have been a futile effort by Thornton since Debt Buyer refused to take the money orders.

78. Thornton has paid more than the agreed upon settlement amount ($4800), has suffered other financial loss from the garnishments hitting his paychecks, and has suffered great emotional distress and mental anguish.

79. The financial impact of Debt Buyer's wrongdoing has caused a hardship for Thornton, including working overtime that he would not have worked but for the wrongdoing of the Debt Buyer.

80. Instead of doing what is reasonable and what any honorable debt collector would do and honor the agreement and make things right, however, Debt Buyer has instead planned, executed, and carried out a collection scheme, plan, and campaign of harassment against Plaintiff which has been successful.

81. Debt Buyer has refused to apologize to Thornton in writing for its collection conduct.

82. Debt Buyer has refused to apologize orally to Thornton for its collection conduct.

83. Indeed, Debt Buyer feels no remorse or sorrow for the way in which it has treated Thornton.

84. Debt Buyer believes all violations of the FDCPA are "technical violations." .

85. Debt Buyer believes that "technical violations" of the FDCPA are not important.

86. Debt Buyer believes the FDCPA is overly restrictive on debt collectors such as Debt Buyer.

87. Debt Buyer believes the FDCPA is not fair towards Debt Buyer as a debt collector.

88. Debt Buyer believes the FDCPA gives too much protection to consumers such as Thornton.

89. Debt Buyer believes the FDCPA is negatively affecting the economy.

90. Debt Buyer believes that there is not abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.

91. Debt Buyer believes that abusive debt collection practices do not contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

92. Debt Buyer admits that it is a debt collector with respect to its conduct towards Thornton.

**SUMMARY**

93. All of the above-described collection communications and actions made to and against Thornton by Debt Buyer and collection agents of Debt Buyer were made in violation of the FDCPA.

94. The Debt Buyer violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692g, and 1692g(a).

95. The above-detailed conduct by this Debt Buyer of harassing Thornton in an effort to collect this debt was also an invasion of Thornton's privacy and resulted in actual damages to the Plaintiff.

96. The above detailed conduct by this Debt Buyer reflects its knowledge and appreciation for the harm that would naturally and likely happen to Thornton and with full knowledge thereof the Debt Buyer willfully, maliciously, recklessly, and/or negligently undertook its actions and it was successful in causing the harm to Thornton that Debt Buyer wanted to cause.

97. Debt Buyer's repeated attempts to illegally collect this debt from Thornton and refusal to stop violating the law was an invasion of Thornton's privacy and Thornton's right to be left alone.

98. Thornton has suffered actual damages as a result of these illegal collection communications by this Debt Buyer in the form of anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, elevated blood pressure, fear of credit damage due to the existence of a judgment, financial loss, as well as suffering from unjustified and abusive invasions of personal privacy, which was due to the illegal conduct of Debt Buyer.

99. The only way that abusive debt collectors like Debt Buyer will stop their abusive practices towards consumers is by a jury verdict fully compensating

Thornton for the harm done to Thornton in excess of $100,000 and by a punitive damage award in excess of $250,000.

100. A punitive damage award in excess of $250,000 will get the attention of Debt Buyer and other abusive debt collectors so that they will realize that it no longer makes economic sense to abuse consumers and to gain an unfair competitive advantage over honorable, law abiding collectors.

101. A full compensatory damage award and a full punitive damage award will accomplish the goals of Congress in passing the FDCPA - stop abusive collection practices against consumers and prevent dishonorable debt collectors from having an unfair advantage over collectors that operate within the boundaries of the law.

## RESPONDEAT SUPERIOR LIABILITY

102. The acts and omissions of Debt Buyer's agents who communicated with Thornton as more further described herein, were committed within the line and scope of their agency relationship with their principal the Debt Buyer.

103. The acts and omissions by these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Debt Buyer in collecting consumer debts.

104. By committing these acts and omissions against Thornton, these other debt collectors were motivated to benefit their principal the Debt Buyer.

105. Debt Buyer is therefore liable to Thornton through the doctrine of Respondeat Superior for the wrongful, intentional, reckless, and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in their attempts to collect this debt from Thornton.

106. Debt Buyer negligently and/or wantonly and/or hired, retained, trained or supervised incompetent debt collectors and is thereby responsible to the Thornton for the wrongs committed against Thornton and the damages suffered by Thornton.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

107. Thornton incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

108. The acts and omissions of Debt Buyer and its agents constitute numerous and multiple violations of the FDCPA with respect to Thornton including, but not limited to the following: 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692g, and 1692g(a).

109. As a result of Debt Buyer's violations of the FDCPA, Thornton is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); (2) actual and compensatory damages; and, (3) reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Debt Buyer.

## COUNT II.

## INVASION OF PRIVACY

110. Thornton incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

111. Alabama law recognizes Thornton's right to be free from invasions of privacy and Debt Buyer violated Alabama state law as described in this Complaint.

112. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

113. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of

consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

114. Debt Buyer and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Thornton, namely, by repeatedly and unlawfully attempting to illegally collect a debt and thereby invaded Thornton's privacy.

115. Debt Buyer and its agents intentionally, recklessly, and/or negligently caused emotional harm to Thornton by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Thornton's right to privacy.

116. Thornton had a reasonable expectation of privacy in Thornton's solitude, seclusion, private concerns or affairs, and private financial information.

117. The conduct of this Debt Buyer and its agents, in engaging in the above-described illegal collection conduct against Thornton, resulted in multiple

intrusions and invasions of privacy by this Debt Buyer which occurred in a way that would be highly offensive to a reasonable person in that position.

118. The conduct of the Debt Buyer went beyond the bounds of reasonableness in the collection of the alleged debt for all of the reasons asserted in this Complaint and based upon the evidence which will be presented at trial.

119. As a result of such intrusions and invasions of privacy, Thornton is entitled to actual damages in an amount to be determined at trial from Debt Buyer.

120. All acts of Debt Buyer and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Debt Buyer is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

121. Thornton incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

122. Debt Buyer negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Thornton, and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

123. Had Debt Buyer hired competent debt collectors, the violations described in this Complaint would not have occurred.

124. Had Debt Buyer properly trained and/or supervised the debt collectors, the violations described in this Complaint would not have occurred.

125. The Debt Buyer carried out its hiring, supervision and training activities in a negligent manner and also in a reckless, malicious, and/or intentional manner.

126. Debt Buyer knew that the actions it was taking against the Plaintiff would likely, and certainly could and/or would cause the exact type of injuries and damages that Plaintiff suffered at the hands of the Debt Buyer.

## COUNT IV

## NEGLIGENT, WANTON, AND INTENTIONAL/MALICIOUS CONDUCT

127. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

128. Debt Buyer owes a duty to anyone it comes in contact with to act reasonably so as to not unreasonably cause harm.

129. Debt Buyer owes a duty to consumers against whom it is collecting to act reasonably.

130. All of the actions described in this Complaint demonstrate that the Debt Buyer did not act reasonably towards the Plaintiff.

131. The Debt Buyer, by its described conduct, breached its duty to act reasonably towards Plaintiff.

132. Debt Buyer proximately caused injuries and damages to Thornton which were of the precise nature that Debt Buyer anticipated causing when it breached its duty to act reasonably.

133. Debt Buyer knew, or should have known, that its conduct was likely to lead to the Plaintiff's injuries yet it acted despite this knowledge.

134. Debt Buyer acted with full knowledge and with the design and intent to cause harm to Thornton.

135. Debt Buyer was successful in its design, intent, and plan to cause harm to Thornton and this is the corporate policy of Debt Buyer when dealing with consumers who do not pay debts that Debt Buyer alleges are owed.

136. It is the corporate policy of Debt Buyer to seek default judgments even when a settlement has been reached with the consumer.

137. Debt Buyer acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Thornton as set forth in this Complaint.

138. Debt Buyer violated all of the duties Debt Buyer had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and negligently.

139. It was foreseeable, and Debt Buyer did in fact foresee it, the actions of the Debt Buyer would lead and did lead to the exact type of harm suffered by Plaintiff.

140. Debt Buyer acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Thornton as set forth in this Complaint.

141. Debt Buyer invaded the privacy of Thornton as set forth in Alabama law.

142. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

143. As a result of this conduct, action, and inaction of Debt Buyer, Thornton has suffered damage as set forth in this Complaint.

**COUNT V**

**MISREPRESENTATION AND SUPPRESSION OF MATERIAL FACTS**

144. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

145. Thornton did not know about the suit or Debt Buyer's alleged ownership of the debt until Thornton was served by Debt Buyer on March 7, 2010, a Sunday.

146. The next day, March 8, 2010, Thornton contacted Debt Buyer about settling the matter to avoid going to court.

147. Thornton was told he had two options to avoid going to court and to settle the case.

148. First, Thornton was told he could pay $2000 at once as payment in full.

149. Or, secondly, Thornton could pay $200 per month until he had paid $4800.

150. Thornton informed Debt Buyer he could not pay $2000, but he could make monthly payments.

151. Thornton, however, told Debt Buyer he could not always make $200 a month payments, but would pay something every month until the $4800 was paid off.

152. (Debt Buyer never told Thornton that the amount of the money he was sending was insufficient or a problem until after the garnishment described below.)

153. Debt Buyer agreed to this monthly payment approach.

154. Thornton requested the information on who and where to send the money to and what to put on the payments.

155. Debt Buyer told Thornton where to send the payments to and what to write on the money orders and who to make the money orders out to.

156. Debt Buyer requested Thornton's current address (Rainbow City) and place of employment (Alabama Power).

157. Thornton provided all information requested by Debt Buyer.

158. Debt Buyer never mentioned to Thornton about garnishment.

159. Debt Buyer never mentioned to Thornton about default judgment.

160. Debt Buyer suppressed from Thornton that it intended to seek a default judgment even in the month of March 2010.

161. Debt Buyer did not tell Thornton it wanted the employment information for garnishment purposes.

162. Thornton believed Debt Buyer in all its representations and suppressions of material fact.

163. Thornton's reliance upon Debt Buyer's representations was reasonable and justified and entirely appropriate.

164. At the time of the misrepresentations and/or suppressions of these material facts, the Debt Buyer had the present intent to deceive and the present intent to not perform what it had promised Thornton.

165. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct related to the misrepresentations and suppressions of material facts has proximately caused the damages set forth in this Complaint.

## COUNT VI

## BREACH OF CONTRACT

166. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

167. Debt Buyer promised to settle the case with Thornton for $4800 payable over time.

168. Thornton honored his agreement with Debt Buyer.

169. Debt Buyer breached its agreement with Thornton.

170. Thornton suffered incidental and consequential damages as a result of the breaches of contract by Debt Buyer.

## PRAYER FOR RELIEF

**WHEREFORE**, Thornton prays that judgment be entered against Debt Buyer:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Debt Buyer;
- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Debt Buyer;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Debt Buyer; and
- for such other and further relief as may be just and proper.

**COUNT II.**

**INVASION OF PRIVACY**

- for an award of actual damages from Debt Buyer for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent state law violations in an amount to be determined at trial for Thornton;
- punitive damage; and
- for such other and further relief as may be just and proper.

**COUNT III.**

**NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS**

- for an award of actual damages from Debt Buyer for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent violations of state law in an amount to be determined at trial for Thornton;
- punitive damage; and
- for such other and further relief as may be just and proper.

## COUNT IV.

## NEGLIGENT, WANTON, AND INTENTIONAL CONDUCT

- for an award of actual damages from Debt Buyer for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent violations of state law in an amount to be determined at trial for Thornton;
- punitive damages; and
- for such other and further relief as may be just and proper.

## COUNT V

## MISREPRESENTATION AND SUPPRESSION OF MATERIAL FACTS

- for an award of actual damages from Debt Buyer for the all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent misrepresentation and/or suppression of material facts in an amount to be determined at trial for Thornton;
- punitive damages; and
- for such other and further relief as may be just and proper.

**COUNT VI.**

**BREACH OF CONTRACT**

- for an award of incidental and consequential damages from Debt Buyer for the all damages including emotional distress suffered as a result of every breach of contract in an amount to be determined at trial for Thornton; and
- for such other and further relief as may be just and proper.

Respectfully Submitted,

/s/ John G. Watts
**John G. Watts**
**Attorney for Plaintiff**

**OF COUNSEL:**
Watts Law Group, PC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattslawgroup.com

/s/ M. Stan Herring
**M. Stan Herring**
**Attorney for Plaintiff**

**OF COUNSEL:**
M. Stan Herring, P.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 714-4443
(888) 522-7167 *facsimile*
msh@mstanherringlaw.com

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

/s/ John G. Watts
**Attorney for Plaintiff**

## CERTIFICATE OF PLAINTIFF

I agree that the factual allegations are accurate and truthful and I am bringing this suit in good faith. I am not bringing this suit for any improper purpose.

Adrian Thornton

**Serve defendant via certified mail at the following address:**

Lionheart Funding, LLC
c/o Keith J. Nadler
3800 Colonnade Parkway
Suite 100
Birmingham, Alabama 35243